# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| TRACEY DAVIS, | : | | |
| *individually and as parent guardian of* | : | | |
| *A.D., a minor,* | : | Civil Action No.: | 15-0135 (RC) |
| | : | | |
| Plaintiff, | : | Re Document Nos.: | 12, 15 |
| | : | | |
| v. | : | | |
| | : | | |
| UNITED STATES, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND/OR CONDUCT DISCOVERY

## I. INTRODUCTION

Plaintiff Tracey Davis,[1] individually and as parent and guardian of her minor child, A.D.,

(collectively, "Plaintiff" or "Ms. Davis"), brought this action against the Transportation Security

Administration ("TSA").  Ms. Davis alleges that a canine owned by the TSA attacked and

injured her child, and her Complaint asserts a negligence claim against the TSA under the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq*.

Defendant[2] has moved to dismiss or, in the alternative, for summary judgment.

Defendant argues that Ms. Davis's Complaint is barred by sovereign immunity and that it fails to

---

[1] The Court notes an inconsistency in Plaintiff's spelling of Ms. Davis's first name. *Compare* Compl., ECF No. 1 ("Tracy Davis"), *with* Pls.' Opp'n Def.'s Mot. Dismiss and/or Summ. J. & Mot. Leave Amend Compl. and/or Conduct Discovery ("Pls.' Opp'n"), ECF No. 15 ("Tracey Davis").  The Court uses the spelling found in Plaintiff's more recent filings.

[2] Although the Complaint named the TSA as Defendant, *see* Compl. at 1, the Government correctly notes that the United States is the only proper defendant in an action under

state a claim upon which relief can be granted.  In her opposition to Defendant's motion, Ms.

Davis moves for leave to file an Amended Complaint and to conduct discovery.  Among other

changes, the proposed Amended Complaint would add the Washington Metropolitan Area

Transit Authority ("WMATA") as a defendant.  Defendant argues that the amended negligence

count against the United States is futile because it would not survive a dispositive motion and

that Ms. Davis has not justified the utility of discovery.

For the reasons stated below, the Court finds that the independent contractor exception to

the FTCA applies to the negligence claim found in the Complaint, and the Court will therefore

dismiss the Complaint for lack of subject matter jurisdiction.  At this time, the Court finds that it

would be premature to determine the application of the discretionary function exception to Ms.

Davis's amended claim against the United States.  Instead, the Court will grant leave to file the

Amended Complaint and permit jurisdictional discovery.  Discovery will be limited only to the

question of whether a mandatory directive governed the training of the TSA canine and, if such a

directive existed, whether TSA employees followed its command.  Finally, the Court will permit

Plaintiff to amend the complaint to add WMATA as a defendant.

---

the FTCA.  *See* Def.'s Mem. P & A Supp. Mot. Dismiss or for Summ. J. at 6 n.2 ("Def.'s
Mem."), ECF No. 12 (citing 28 U.S.C. § 2679); *see also Johnson v. Veterans Affairs Med. Ctr.*,
133 F. Supp. 3d 10, 16 (D.D.C. 2015) ("FTCA suits 'must name the United States as
defendant.'") (quoting *Goddard v. D.C. Redevelopment Land Agency*, 287 F.2d 343, 345–46
(D.C. Cir. 1961)).  Here, the Government "does not object to amendment of the caption
substituting the United States as the sole defendant."  Def.'s Mem. at 6 n.2; *see also* Pls.' Opp'n
at 1 n.1 (noting the consent of the United States to be substituted as Defendant).  The United
States is therefore substituted for the TSA as Defendant in this action.

## II. BACKGROUND

According to the Complaint, Plaintiff Tracey Davis and her minor daughter, A.D.,
attended the presidential inaugural parade in Washington, D.C. on January 21, 2013. *See* Compl.
¶ 8; Def.'s Mem. at 7, ¶ 3. Following the parade, Ms. Davis and her daughter approached an
escalator in a WMATA Metro station to board a train and return home. *See* Compl. ¶ 9; Def.'s
Mem. at 7, ¶ 4. A law enforcement officer was standing in the station handling a canine that was
owned by the TSA. *See* Compl. ¶ 10; Def's Mem. at 7, ¶ 5; Decl. of Matthew DeMoss
("DeMoss Decl.") ¶¶ 11–12, ECF No. 12-1. According to the Complaint, "the K-9 suddenly and
ferociously attacked A.D., biting her head and causing her injuries." Compl. ¶ 12; *see also*
Def.'s Mem. at 7, ¶ 6 ("As Plaintiffs were about to step onto the escalator to enter the subway
station, A.D. and the K-9 had an encounter, from which Plaintiff asserts injuries.")

Defendant attaches to its motion the Declaration of Matthew DeMoss. *See* DeMoss
Decl.[3] Mr. DeMoss is employed by the TSA as a Field Canine Coordinator in the TSA's
National Explosives Detection Canine Team Program ("Program" or "NEDCTP"). *Id.* ¶ 1. At
the time of the incident at issue in this case, Mr. DeMoss was the Field Canine Coordinator
responsible for the Greater Rochester Regional Airport and the associated canine units handled

---

[3] When considering a motion to dismiss for failure to state a claim or for lack of subject
matter jurisdiction, a court "accepts the allegations of the complaint as true." *Banneker
Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citations omitted). If
necessary to resolve a challenge to subject matter jurisdiction under Rule 12(b)(1), a court may
"consider the complaint supplemented by undisputed facts evidenced in the record." *Id.*
(quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)). In this case,
Ms. Davis has not objected to the facts found in Mr. DeMoss's Declaration or to the attached
Cooperative Agreement. In fact, Ms. Davis has attached both documents to her opposition to
Defendant's motion, *see* Pls.' Opp'n, Exs. 2–3, and included new facts from these materials in
her opposition and proposed Amended Complaint, *see* Pls.' Mem. Law Supp. Pls.' Opp'n Mot.
Dismiss and/or Summ. J. & Mot. Leave Amend Compl. and/or Conduct Discovery ("Pls.'
Mem.") at 4–5. Thus, for the purposes of resolving the jurisdictional challenge, the Court will
rely on facts found in those documents.

by the Monroe County Sheriff's Office ("Sheriff's Office"). *See id.* ¶ 2. Mr. DeMoss attaches to his Declaration an NEDCTP Cooperative Agreement and a related Statement of Joint Objectives (collectively, the "Agreement"), that defines the relationship between the TSA, the Sheriff's Office, and the Greater Rochester International Airport. *See id.* ¶ 2; *see also* Coop. Agreement at 1, ECF No. 12-2; Statement of Joint Objectives ("SOJO") at 1, ECF No. 12-2. The Statement of Joint Objectives is signed by representatives of the TSA and the Sheriff's Office. *See* SOJO at 10.

Under the terms of the Agreement, TSA-certified canine teams, made up of a Sheriff's Office handler and a TSA-owned canine, "will be available to respond to Monroe County Sheriff's Office, 24 hours a day, 7 days per week, with the intent to provide maximum coverage during peak operating hours." Coop. Agreement at 2; *see also* DeMoss Decl. ¶¶ 5-6. The Agreement lists additional responsibilities for the Sheriff's Office, including that the canine teams will spend at least 80% of their annual duty time "in the transportation environment." SOJO at 3. Although the TSA owns the canines involved in the Program, *see id.* at 6, the Sheriff's Office maintains day-to-day custody and control over them pursuant to the Agreement. *See* SOJO at 3–4; DeMoss Decl. ¶ 10. Among other things, the TSA is responsible for training handlers entering the Program, providing a subsequent "[o]n-site training mission" and certification for canine teams, and evaluating the canine teams on an annual basis. *See* SOJO at 1–2; *see also* Pls.' Mem. at 4–5.[4]

The Agreement states that the participants may "jointly determine that it is appropriate to use . . . canine teams to assist another agency/entity in the event of a critical local, state, national,

---

[4] Because Plaintiff's memorandum is not separately paginated, the Court will rely on the page number of the full document filed on the Court's ECF system (ECF No. 15).

or international matter." SOJO at 9; *see also* Pls.' Mem. at 5. Mr. DeMoss asserts that the canine team in question in this case was voluntarily assisting WMATA during the inauguration events in Washington, D.C. on January 21, 2013. *See* DeMoss Decl. ¶ 11; *see also* Pls.' Mem. at 5; Am. Compl. ¶ 15, ECF No. 15. The canine handler involved in the incident was a Monroe County Sheriff's Office employee. *See* DeMoss Decl. ¶ 12; *see also* Pls.' Mem. at 4; Am. Compl. ¶¶ 13–14.

Ms. Davis filed suit in this Court in January 2015, individually and as parent and guardian of A.D. *See generally* Compl. Her Complaint includes a single negligence count against the TSA, brought pursuant to the FTCA, 28 U.S.C. §§ 1346(b), 2671 *et seq. See Id.* ¶¶ 13–16. Defendant moves to dismiss Ms. Davis's claim, or, in the alternative, for summary judgment. *See* Def.'s Mot. Dismiss or for Summ. J. ("Def.'s Mot."), ECF No. 12. Specifically, Defendant argues that Ms. Davis's negligence claim is barred by sovereign immunity, *see* Def.'s Mem. at 8–10, and that the Complaint fails to state a claim upon which relief can be granted, *see id.* at 11–12. Ms. Davis opposes the motion, and also moves for leave to file an Amended Complaint and to conduct discovery. *See generally* Pls.' Opp'n. The Court addresses the pending motions in turn.

### III. DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Defendant moves to dismiss the Complaint on two grounds. First, Defendant argues that the Court should dismiss the Complaint for lack of subject matter jurisdiction because Ms. Davis's negligence claim falls within the independent contractor exception to the FTCA and is therefore barred by sovereign immunity. *See* Def.'s Mem. at 8–10. Second, Defendant argues that the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted because Ms. Davis has failed to plead the necessary elements of negligence. *Id.* at 11–

12.  In the alternative, Defendant moves for summary judgment.  *Id.* at 1.  The Court must begin its analysis by determining whether it has jurisdiction.  Because the independent contractor exception to the FTCA applies to Ms. Davis's negligence claim against the United States, the Court will dismiss the Complaint for lack of subject matter jurisdiction.[5]

## A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction."  *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.").  It is the plaintiff's burden to establish that the court has subject matter jurisdiction.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).  When considering whether it has jurisdiction, a court must accept "the allegations of the complaint as true."  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  In this context, a court may also "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Id.*  (quoting *Herbert*, 974 F.2d at 197).

---

[5] The Court, therefore, does not reach Defendant's arguments under Rule 12(b)(6) or for summary judgment pursuant to Rule 56(a).  *See Simpkins v. Dist. Columbia Gov't,* 108 F.3d 366, 371 (D.C. Cir. 1997) ("[T]he rule is strict that once a court determines that it lacks subject matter jurisdiction, it can proceed no further.").

### B. Analysis

Defendant argues that the Court lacks subject matter jurisdiction over Ms. Davis's Complaint because her claim falls under the independent contractor exception to the FTCA's waiver of sovereign immunity. The Court agrees and will therefore dismiss the Complaint's negligence claim against the United States pursuant to Federal Rule of Civil Procedure 12(b)(1).

Sovereign immunity shields the federal government and its agencies from suit and is "jurisdictional in nature." *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 79 (D.D.C. 2012) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)) (other citations omitted). The government may waive immunity, but such a waiver "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *Meyer*, 510 U.S. at 475). The plaintiff bears the burden "of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign immunity." *Am. Road & Transp. Builders Ass'n*, 865 F. Supp. 2d at 80 (citations omitted). Once a court "determines that it lacks subject matter jurisdiction, it can proceed no further." *Simpkins v. Dist. Columbia Gov't,* 108 F.3d 366, 371 (D.C. Cir. 1997).

The FTCA contains a limited waiver of sovereign immunity that allows the United States to be sued for the negligent acts or omissions of its employees acting within the scope of their employment. *See* 28 U.S.C. § 1346(b)(1); *see also United States v. Orleans*, 425 U.S. 807, 813 (1976). Specifically, the FTCA waives sovereign immunity based on an "injury . . . caused by a negligent or wrongful act or omission of *any employee of the Government* while acting within the scope of his office or employment . . . if a private person would be liable to the claimant." 28

U.S.C. § 1346(b)(1) (emphasis added). The FTCA's definition of "employee of the government" includes "employees of any federal agency," but the definition of "federal agency" explicitly excludes "any contractor with the United States." 28 U.S.C. § 2671. Based on this language, the Supreme Court has recognized an "independent contractor exception" to the FTCA. *See Orleans*, 425 U.S. at 814. Following *Orleans*, courts "routinely hold that the United States cannot be sued where the alleged duty of care has been delegated to an independent contractor." *See Hsieh v. Consol. Eng'g Servs., Inc.*, 569 F. Supp. 2d 159, 176 (D.D.C. 2008) (first citing *Cannon v. United States*, 645 F.2d 1128, 1133–39 (D.C. Cir. 1981); and then citing *Cooper v. United States Gov't*, 225 F. Supp. 2d 1, 4 (D.D.C. 2002)).

When considering whether the independent contractor exception to the FTCA applies, a court must evaluate the level of control that the United States exercises over the contractor. Under this exception, the government can only be liable for a contractor's acts, if the contractor's "day-to-day operations are supervised by the Federal Government." *Orleans*, 425 U.S. at 815. The Supreme Court has further explained that a "critical element in distinguishing an agency from a contractor is the power of the Federal Government 'to control the detailed physical performance of the contractor.'" *Id.* at 814 (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)). The D.C. Circuit has made clear that "the government may 'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence." *Macharia v. United States*, 334 F.3d 61, 68–69 (D.C. Cir. 2003) (quoting *Orleans*, 425 U.S. at 816). The United States is also permitted to "reserve the right to inspect the contractor's work and monitor its compliance with federal law without vitiating the independent contractor exception." *Hsieh*, 569 F. Supp. 2d at 177 (citing *Orleans*, 425 U.S. at 815).

The Court agrees with Defendant that the independent contractor exception applies to Ms. Davis's negligence claim and that the Court therefore lacks subject matter jurisdiction over the Complaint. The Complaint alleges that TSA, "[t]hrough its agent, servant, and/or employee, . . . owed a duty to the Plaintiffs to control its K-9 and to otherwise act in a reasonable manner to avoid injuring A.D." Compl. ¶ 14. On the Complaint's own terms, the negligence claim against Defendant relies on the actions of a Monroe County Sheriff's Office employee. An employee of the Sheriff's Office is not an "employee of the government" for the purposes of the FTCA. 28 U.S.C. § 1346(b)(1).

Nor does the affiliation between the TSA and the Sheriff's Office exceed the usual bounds of an independent contractual relationship for the purposes of the FTCA. To be sure, the Agreement between the federal and local agencies does give the TSA a degree of supervision over the canine teams in the Program. Among other things, the Sheriff's Office must draft a written plan explaining how TSA-provided canine teams will respond to critical threats in less than forty-five minutes, *see* SOJO at 4, and ensure that handlers and canines meet training requirements, including "TSA-mandated proficiency training," *id.* at 4–5. Additionally, a TSA Field Canine Coordinator is "responsible for overseeing and evaluating the [Sheriff's Office's] compliance with the conditions of the" Agreement. *Id.* at 3. The Agreement also places general conditions on how the canine teams can be deployed. For instance, canine teams must "maintain the ability to promptly respond to threats at" various forms of transportation infrastructure and they are required to spend at least 80% of their annual duty time "in the transportation environment." *Id.* at 3. Similar terms require a percentage of each canine team's duty time to be spent searching cargo. *Id.*

These contractual terms do not, however, constitute supervision of "day-to-day operations . . . by the Federal Government." *Orleans*, 425 U.S. at 815. Nor does the TSA "control the detailed physical performance of the contractor." *Logue*, 412 U.S. at 528. The Agreement provides only operation parameters and guidelines, such as training requirements and minimum standards of coverage. For instance, instead of TSA exercising direct control over the canine teams or mandating its own response plan, the Agreement requires the Sheriff's Office to maintain its own plan for how canine teams "will respond to threat incidents . . . within a maximum of 45 minutes." SOJO at 4. Similarly, the Agreement sets minimum operational expectations, but leaves it to the Sheriff's Office to determine how those standards are accomplished in practice. *See, e.g.*, *id.* at 3 (setting percentage targets for use of operational time in different settings). The fact that TSA and its Field Canine Coordinator monitor the canine teams and enforce the terms of the Agreement is not enough to sidestep the independent contractor exception to the FTCA. The federal government is permitted to "'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence." *Macharia*, 334 F.3d at 68–69 (quoting *Orleans*, 425 U.S. at 816). Similarly, it may "reserve the right to inspect the contractor's work and monitor its compliance with federal law without vitiating the independent contractor exception." *Hsieh*, 569 F. Supp. 2d at 177 (citing *Orleans*, 425 U.S. at 815).

The Supreme Court's decision in *Logue*, 412 U.S. 521, is instructive here. In *Logue*, the Court held that employees of a county jail were not employees of the United States for the purposes of the FTCA, even though the jail housed federal prisoners subject to a contract with the Federal Bureau of Prisons. *Id.* at 532. The Court rejected federal liability even though the contract required compliance with the Bureau's "rules and regulations," even dictating the

"methods of discipline, rules for communicating with attorneys, visitation privileges, mail, medical services, and employment." *Id.* at 530. The contract gave the Bureau the right to inspect the jail and determine the conditions of the prisoners, but did not give the right "to physically supervise the conduct of the jail's employees." *Id.* The Agreement at issue here is the same. The Agreement fixes specific conditions and objectives and allows the TSA to monitor the Sheriff's Office's performance, but it does not give the government direct, physical control over the day-to-day operations of the canine teams.

For these reasons, the Court finds that the independent contractor exception to the FTCA applies to the negligence claim found in the Complaint. Thus, sovereign immunity bars the claim and the Court will dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

## IV. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND SEEK DISCOVERY

In her opposition to Defendant's motion, Ms. Davis moves for leave to file an Amended Complaint and to conduct discovery on a number of issues. *See* Pls.' Opp'n at 1. Specifically, Ms. Davis argues that, if "the Complaint does not contain sufficient facts to defeat the United States' Motion, the Court should grant Plaintiffs leave to amend . . . to add necessary parties and provide sufficiently pled facts that would defeat the Motion." Pls.' Mem. at 9. Among other changes, the proposed Amended Complaint names WMATA as an additional defendant. *See* Am. Compl. ¶¶ 18–21. Plaintiff also argues that she should "be permitted to perform discovery, pursuant to [Federal Rule of Civil Procedure] 56(d)." Pls.' Mem. at 10. For the reasons stated below, the Court will grant Plaintiff leave to file the Amended Complaint and will permit limited jurisdictional discovery. Finally, the Court will grant leave to amend the Complaint to add WMATA as a defendant.

## A. Legal Standard

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend her pleading once as a matter of course within twenty-one days after effecting service, or twenty-one days after the service of a responsive pleading under Rule 12(b), (e) or (f). *See* Fed. R. Civ. P. 15(a)(1). After that time, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Hoping to amend her complaint, and not having obtained Defendant's written consent, Ms. Davis now seeks the Court's leave to do so. *See* Pls.' Mem at 9.

Typically, leave to amend a complaint should be freely given "when justice so requires." Fed R. Civ. P. 15(a)(2). In deciding whether to allow a party to amend a complaint, however, courts may consider "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 344 (D.C. Cir. 1997) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment would be futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002). A court considers the proposed amendments "under the same standard as would be applied to a motion to dismiss." *Oladokun v. Corr. Treatment Facility*, 5 F. Supp. 3d 7, 13 (D.D.C. 2013).

## B. The Amended Complaint's Allegations against the United States

Plaintiff briefly argues the she should be permitted to amend the Complaint "to add necessary parties and provide sufficiently pled facts that would defeat" Defendant's motion.

Pls.' Mem. at 9.  The proposed Amended Complaint includes a single negligence count against

the United States.  *See* Am. Compl. ¶¶ 22–25.  Specifically, the Amended Complaint alleges that

the United States "breached its duty to the Plaintiffs and caused injury to A.D., by failing to

properly train, supervise and/or control its dog which constitutes the tort of negligence."  *Id.*

¶ 24.  Defendant argues that amendment would be futile, because the Amended Complaint could

not survive a dispositive motion.  *See* Def.'s Reply Supp. Def.'s Mot. Dismiss or for Summ. J.

("Def.'s Reply") at 5–10, ECF No. 16.  Specifically, Defendant argues that the Court does not

have subject matter jurisdiction because the new training aspect of the amended claim against the

United States falls under the discretionary function exception to the FTCA.[6]  *Id.* at 7.  At this

time, the Court finds it would be premature to determine that the amended negligence claim is

barred by the discretionary function exception and therefore futile.  Instead, the Court will permit

limited jurisdictional discovery for the purpose of resolving that question.

### 1.  The Independent Contractor Exception to the FTCA

The Amended Complaint's negligence count against the United States is based on TSA's

alleged failure to train, supervise, and control the canine in question.  *See* Am. Compl. ¶ 24

(alleging that TSA failed "to properly train, supervise and/or control its dog").  The Court has

already decided, however, that the independent contractor exception to the FTCA bars federal

liability for the actions of the Sheriff's Office employee handling the canine at the time of the

incident.  Although the TSA owns the canine, the Sheriff's Office is responsible for its day-to-

day supervision and handling.  *See* SOJO at 3–4; DeMoss Decl. ¶ 10.  An amendment is futile "if

it merely restates the same facts as the original complaint in different terms" or "reasserts a claim

---

[6] Defendant also renews its argument on the merits that TSA "does not owe any duty to
Plaintiff."  Def.'s Reply at 6.

on which the court previously ruled." *Robinson*, 211 F. Supp. 2d at 114. Thus, for the reasons previously stated, the independent contractor exception makes amendment futile to the extent that the Amended Complaint seeks to hold the United States liable for the actions of the Sheriff's Office or for TSA's failure to supervise or control the canine.

2. The Discretionary Function Exception to the FTCA

The Amended Complaint does include one new aspect—an allegation that the United States is liable to Plaintiff for the negligent training of the canine. *See* Am. Compl. ¶ 24. Specifically, the Amended Complaint alleges that the United States failed "to properly train . . . its dog." *Id.* Defendant argues that this addition to the Complaint is also futile because "the discretionary function exception to the FTCA's general waiver of sovereign immunity applies." Def.'s Reply at 7. For the reasons stated below, the Court finds that additional facts are necessary to resolve the application of the discretionary function exception.

The discretionary function exception is another exclusion from the FTCA's general jurisdictional grant and waiver of sovereign immunity. *See Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2011) (citations omitted). Under this exception, the United States expressly retains its immunity for "any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Because the purpose of the exception is to shield discretionary policy decisions from liability, the exception applies even when an employee's alleged acts are negligent. *See United States v. Gaubert,* 499 U.S. 315, 323 (1991). "If the discretionary function exception applies, the district court lacks subject matter jurisdiction over the case." *Sloan*, 236 F.3d at 759 (quoting *Cope v. Scott*, 45 F.3d 445, 448 (D.C. Cir. 1995)).

In *United States v. Gaubert*, the Supreme Court created a two-step test to determine if the discretionary function exception applies to a government action. 499 U.S. 315 (1991). First, the exception "covers only acts that are discretionary in nature" and "'involv[e] an element of judgment or choice.'" *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1954)). The exception will not apply where a "federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *Id.* at 322 (quoting *Berkovitz,* 486 U.S. at 536)). In the case of a specific prescription, "no discretion is employed and the only remaining inquiry . . . is whether the employee did, or did not, do what was prescribed by the applicable statute, regulation, or policy." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 82 (D.D.C. 2005) (citations omitted).

Second, even if "the challenged conduct involves an element of judgment," that judgment must be "of the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. at 322–23 (quoting *Berkovitz,* 486 U.S. at 536). The exception is intended to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic and political policy," so it only protects "governmental actions and decisions based on considerations of public policy." *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537). When evaluating the governmental action or decision, a court's decision should not turn on "what the decisionmaker was thinking, but [rather] the type of decision being challenged." *Loughlin v. United States*, 393 F.3d 155, 163 (D.C. Cir. 2004) (quoting *Cope*, 45 F.3d at 449) (alteration in original).

The Court will begin its analysis with the second prong of the *Gaubert* test, which asks "whether the type of decision being challenged is grounded in social, economic, or political policy." *Macharia v. United States*, 334 F.3d 61, 67 (D.C. Cir. 2003) (quoting *Cope*, 45 F.3d at

449).  Defendant argues that the TSA exercises discretion when creating its training methods and

procedures, and that it necessarily considers policy implications when deciding how to train its

canines.  *See* Def.'s Reply at 9.  The critical question is "whether the 'nature' of the decision

implicates policy analysis."  *Cope*, 45 F.3d at 449 (citations omitted).  In other words, what

matters is the "type of decision being challenged" not "what the decisionmaker was thinking" at

the time.  *Id.*

Several courts in this Circuit have found that training decisions are grounded in public

policy and satisfy the second prong of *Gaubert*.  Following *Gaubert*, the D.C. Circuit held that

"hiring, training, and supervision choices that WMATA faces are choices 'susceptible to policy

judgment.'"  *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir.

1997).[7]  On the issue of training, the court elaborated:

> The extent of training with which to provide employees requires consideration of
> fiscal constraints, public safety, the complexity of the task involved, the degree of
> harm a wayward employee might cause, and the extent to which employees have
> deviated from accepted norms in the past. Such decisions are surely among those
> involving the exercise of political, social, or economic judgment.

*Id.*  In *Macharia*, the D.C. Circuit affirmed the district court's dismissal of claims arising from

the terrorist attack on the United States Embassy in Nairobi, Kenya.  334 F.3d at 69.  In its

analysis of *Gaubert's* second prong, the court agreed with the district court that "how much

training should be given to guards and embassy employees . . . necessarily entails balancing

competing demands for funds and resources."  *Id.* at 67.  Applying these principles, other district

courts have reached similar conclusions in the law enforcement context.  *See, e.g.*, *Bostic v. U.S.*

*Capitol Police*, 644 F. Supp. 2d 106, 110 (D.D.C. 2009) ("The [Capitol Police's] training and

---

[7] Although *Burkhart* dealt with WMATA's sovereign immunity, instead of the FTCA's
waiver of federal sovereign immunity, the court made clear that it was interpreting *Gaubert* and
that the WMATA and FTCA rules were analogous.  *See Burkart*, 112 F.3d at 1216.

supervision of employees is exactly the kind of discretionary function that is not subject to judicial second-guessing."); *Tookes v. United States*, 811 F. Supp. 2d 322, 330 (D.D.C. 2011) ("[T]he governing case law in this Circuit firmly supports a finding that the supervision and training of deputy marshals are discretionary governmental functions grounded in social, economic, and political policy.").

TSA faces a range of difficult choices when allocating its limited resources and pursuing its important objective of protecting transportation in the United States. The same policy concerns described in other negligent training cases also shape the TSA's decisions with regard to training canines in the Program. Just as with human employees, creating a training program for canines "requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward [canine] might cause, and the extent to which [canines] have deviated from accepted norms in the past." *Burkhart*, 112 F.3d at 1217. Decisions of that type require the exercise of political, social, or economic judgment, *id.*, and it is not necessary for the government to provide details of the actual rationale for the training decisions implicated by the Amended Complaint, *See Loughlin*, 393 F.3d at 163 (citations omitted).

Resolving the second *Gaubert* prong in the Defendant's favor does not resolve the issue, however. Under the first prong, the United States could still be liable if "the injury resulted from a government employee's failure to follow a specific, mandatory policy requiring a particular course of action." *Singh v. S. Asian Soc'y of The George Washington Univ.*, No. 06-0574, 2007 WL 1521050, at *6 (D.D.C. May 21, 2007) (citations omitted). If the allegedly negligent act was controlled by any statute, regulation or established policy, it cannot be discretionary because "the employee ha[d] no rightful option but to adhere to the directive." *Berkovitz,* 486 U.S. at 536. Defendant argues that Plaintiff has failed to "point to any federal statute, regulation, directive, or

policy that specifically prescribes TSA's training methods and procedures for the NEDCTP canines." Def.'s Reply at 9. Although it does not appear that Ms. Davis has identified any regulation or policy, she has sought broad permission to conduct discovery. For the reasons explained below, and in light of Plaintiff's request and this Circuit's liberal approach to jurisdictional discovery, the Court finds that it would be premature to resolve the first *Gaubert* prong without giving Plaintiff an opportunity to conduct limited, jurisdictional discovery.

### 3. Plaintiff's Request for Discovery

Plaintiff moves for discovery in order to:

> [D]evelop facts regarding the relationship between the TSA and the [Greater Rochester Regional Airport/Monroe County Sheriff's Office]; to determine the history of the canine in question; to determine what training was provided by the TSA to its canine and to the canine teams; to determine the sufficiency of the training; to determine whether the TSA's training, oversight, guidance and/or direction of the canine and canine teams met applicable standards of care; and to obtain other information on the issue of the TSA's actions or inactions contributing to the incident under suit.

Pls.' Mem. at 10. Defendant argues that Plaintiff has not "offered specific reasons to demonstrate the necessity and utility of discovery." Def.'s Reply at 11. In light of this Circuit's liberal approach to jurisdictional discovery in this context, the Court will permit limited discovery.

At the outset, the Court notes that Defendant has not only moved to dismiss on the basis that this Court lacks subject matter jurisdiction and that Ms. Davis has failed to state a claim upon which relief can be granted, but has also moved, in the alternative, for summary judgment. *See* Def.'s Mot at 1. Plaintiff's request for discovery, which cites only Federal Rule of Civil Procedure 56(d), does not distinguish between these arguments or specify why discovery is necessary to defeat any specific component of Defendant's motion. *See* Pls.' Mem. at 10. Because the Court does not reach the summary judgment analysis, it is not clear that Rule 56(d)

applies in the context of a jurisdictional challenge under Rule 12.[8]  Courts in this Circuit

considering requests for jurisdictional discovery related to exceptions to the FTCA have not

relied on Rule 56(d).  *See*, *e.g.*, *Loughlin*, 393 F.3d at 166–68; *Ignatiev v. United States*, 238

F.3d 464, 466–67 (D.C. Cir. 2001); *Donahue v. United States*, 870 F. Supp. 2d 97, 114–15

(D.D.C. 2012); *Sledge v. United States*, 723 F. Supp. 2d 87, 92–98 (D.D.C. 2010).[9]  The Court

will follow the path of other courts in this Circuit, and will treat Plaintiff's argument under Rule

56(d) as a request for jurisdictional discovery.

"This Circuit's standard for permitting jurisdictional discovery is quite liberal."  *Diamond*

*Chemical Co., Inc. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003).  The D.C.

Circuit has stated that "if a party demonstrates that it can supplement its jurisdictional allegations

through discovery, then jurisdictional discovery is justified."  *GTE New Media Services, Inc. v.*

*BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).  "The district court retains considerable

latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction,"

but, "[i]n order to avoid burdening a sovereign that proves to be immune from suit . . .

jurisdictional discovery should be carefully controlled and limited."  *Phoenix Consulting Inc. v.*

*Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (citations and quotation marks omitted).

---

[8] Certainly, if the Court lacks subject matter jurisdiction, Plaintiff is not entitled to conduct discovery on the merits of her claim.  *See Macharia,* 334 F.3d at 68 (stating that merits discovery is "entirely irrelevant to the jurisdictional issue raised by the government's motion" to dismiss based on the discretionary function exception).

[9] While other Circuits have looked "to decisions under Rule 56 for guidance in determining whether to allow discovery on jurisdictional facts," they have relied on those decisions only by analogy.  *Johnson v. United States*, 534 F.3d 958, 965 (8th Cir. 2008); *see also Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) ("Although a motion to dismiss for lack of jurisdiction cannot be converted into a Rule 56 motion, a court may nonetheless look to Rule [56(d)] for guidance in considering the need for discovery on jurisdictional facts.") (citations omitted).

In the FTCA context, courts in this Circuit frequently grant jurisdictional discovery where plaintiffs have challenged the application of exceptions to the FTCA. *See, e.g.*, *Ignatiev*, 238 F.3d at 467 (reversing the district court's decision to prohibit discovery regarding whether non-public, mandatory guidelines existed); *Loughlin*, 393 F.3d at 166–68, 172 (finding that the district court erred in suggesting that jurisdictional discovery is limited to the first prong of the discretionary function exception test); *Sledge*, 723 F. Supp. 2d at 94–95 (permitting limited jurisdictional discovery); *Singh*, 2007 WL 1521050, at *6 (same). When considering an exception to the FTCA, the D.C. Circuit has "recognized that where 'facts [are] necessary to establish jurisdiction,' plaintiffs *must* be afforded the opportunity for discovery of [such] facts . . . prior to' the granting of a motion to dismiss for lack of subject matter jurisdiction." *Loughlin*, 393 F.3d at 167 (D.C. Cir. 2004) (alterations in original) (emphasis added) (citing *Ignatiev*, 238 F.3d at 467).

The Court finds that limited discovery is warranted in this case. In order to determine whether the discretionary function exception applies to Plaintiff's FTCA claim, the Court must consider factual matters outside the Amended Complaint. Although Plaintiff does not explicitly allege that TSA employees violated any specific mandatory directive, Ms. Davis does argue that "the TSA trained [the] canine handlers 'using established TSA proficiency/certification standards.'" Pls.' Mem. at 4–5 (citing SOJO at 2). Based on the current record, it is not clear, and the Court does not decide, whether those standards constitute a mandatory directive that could implicate the first prong of *Gaubert*. Discovery may clarify the significance of those standards and whether TSA employees adhered to them, if they were required to do so. The Court also notes that the Statement of Joint Objectives found in the Agreement refers to the "Program's Standard Operating Practices and Procedures (SOPP)." *See* SOJO at 2. Limited

jurisdictional discovery may reveal whether those practices and procedures constitute binding direction for TSA employees. At this time, the Court does not decide the significance of the "proficiency/certification standards" or the Program's SOPP, and Plaintiff is not limited to seeking discovery on these examples.

Of course, Plaintiff's discovery will be strictly limited to jurisdictional issues.[10] The Court recognizes that "jurisdictional discovery should be carefully controlled and limited" to avoid burdening a sovereign who may be immune from suit. *Phoenix Consulting*, 216 F.3d at 40. To the extent Plaintiff's motion seeks leave to conduct discovery on non-jurisdictional issues, the motion is denied without prejudice. At this time, Ms. Davis will not be permitted to seek discovery on the merits of her case. For example, several issues listed in Plaintiff's request for discovery, including "whether the TSA's training, oversight, guidance and/or direction of the canine and canine teams met applicable standards of care," *see* Pls.' Mem. at 10, are irrelevant to the threshold jurisdictional question at issue here. The only issues subject to discovery at this time are whether a mandatory directive governed the training of TSA canines in the NEDCTP

---

[10] The D.C. Circuit has clarified that discovery may be permitted for the second prong of the *Gaubert* test. *See Loughlin*, 393 F.3d at 167 ("No bright line rule confines discovery to prong one of the discretionary function exception."). The *Louglin* court also noted, however, that "[b]ecause the prong-two inquiry looks to the *type* of decision whether to warn, irrespective of considerations that factored into the *actual* decision, . . . it may often be the case that discovery is unnecessary to determine whether prong two of the discretionary function exception extends to any particular act or omission." *Id.* at 166 (citing *Cope v. Scott*, 45 F.3d 445, 449 (D.C. Cir. 1995)). This is not a case where "the factual predicate is critical to an accurate analysis of the nature of the decision made." *Id.* 166–67. Instead, the Court's analysis of the second prong is relatively straightforward. Creating a training program, as other courts have found, requires the consideration of social, economic and political policy. *See, e.g.*, *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997). Because the Court's analysis focuses on the *type* of decision, rather than the *actual* decision-making process, discovery is not necessary to resolve the second prong.

and whether TSA employees violated that directive. Following the completion of jurisdictional discovery, Defendant may renew its motion to dismiss or again seek summary judgment.[11]

## C. The Addition of WMATA as a Defendant

The Court will next consider Plaintiff's request to add WMATA as an additional defendant. Ms. Davis argues that she "should also be allowed to amend the Complaint to include WMATA as a Defendant since WMATA may have also owed a duty to Plaintiffs at the time of the alleged incident." *See* Pls.' Mem. at 9. The proposed Amended Complaint includes a single negligence count against WMATA based on the same factual allegations brought against the United States. *See* Am. Compl. ¶¶ 18–21.

Plaintiff moves to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a), which "allows a party to amend its pleading to add a new party."[12] *Amore ex rel. Estates of Amore v. Accor*, 529 F. Supp. 2d 85, 91 (D.D.C. 2008) (citations omitted); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1474 (3d ed. 2016) ("[A] party may make a Rule 15(a) amendment to add, substitute, or drop parties to the action.). The decision to grant or deny leave to amend is within the court's discretion. *See Firestone v.*

---

[11] The Court appreciates the security implications of allowing discovery about the training of canines employed in airport security. Accordingly, discovery will be further limited to directives concerning training with respect to discipline, safety, and interactions with the public, not training concerning the detection of contraband and/or explosives.

[12] The Court notes that amending a complaint to add a party could, in some instances, implicate the joinder rules found in Federal Rules of Civil Procedure 20 and 21. *See Amore ex rel. Estates of Amore*, 529 F. Supp. 2d at 91 n.2. After a responsive pleading has been filed, however, the "standard for adding a party is the same regardless of the rule under which the motion is made: the decision lies within the discretion of the court." *Id.* (first citing *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 n.29 (D.D.C. 1994); and then citing *Oneida Indian Nation v. County of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000)); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1474 (3d ed. 2016) ("[T]he same basic standard for adding or dropping a party will apply whether the pleader moves under Rule 15(a) or Rule 21.").

*Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996). Leave to amend, however, "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). A denial must be supported by sufficient reasons, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, the Court is not aware of any evidence of undue delay, bad faith, or dilatory motive. Plaintiff seeks to add WMATA as a defendant based on information provided by the United States in its motion to dismiss. Plaintiff's motion for leave to amend, included in her opposition to the motion to dismiss, followed soon after the United States provided information about WMATA's possible connection to the incident at issue in this case. As Plaintiff notes, the request for leave to file the Amended Complaint was filed within the District of Columbia's three-year statute of limitations for negligence claims. *See* D.C. Code § 12-301 (setting a three-year limitation period for causes of action "for which a limitation is not otherwise specially prescribed"); *see also Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998) (noting that the residual, three-year statute of limitations applies to personal injury claims). The timing of Plaintiff's request suggests that WMATA is unlikely to face undue prejudice if it is added as a defendant in this case.[13] For these reasons, the Court will grant Plaintiff's motion for leave to amend her Complaint to add WMATA as a defendant.

---

[13] As previously discussed, leave to amend may be denied where the amendment would be futile because the new claims could not survive a motion to dismiss. *See Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002). The Court notes the possibility that sovereign immunity may bar the negligence claim against WMATA, *see Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997), but, without the benefit of argument by the parties, the Court does not find that amendment is necessarily futile.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 12) is **GRANTED** and Plaintiff's Motion to Amend the Complaint and/or Conduct Discovery (ECF No. 15) is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 20, 2016

RUDOLPH CONTRERAS
United States District Judge